*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0096p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JAMES R. GOFF,

        *Petitioner-Appellant,*

       *v.*

MARGARET BAGLEY, Warden,

          *Respondent-Appellee.*

No. 06-4669

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00307—James L. Graham, District Judge.

Argued: April 28, 2009

Decided and Filed: April 6, 2010

Before: MERRITT, MOORE, and GILMAN, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** David J. Graeff, Westerville, Ohio, for Appellant. Laurence R. Snyder, OFFICE OF THE OHIO ATTORNEY GENERAL, Cleveland, Ohio, for Appellee. **ON BRIEF:** David J. Graeff, Westerville, Ohio, W. Joseph Edwards, LAW OFFICE OF W. JOSEPH EDWARDS, Columbus, Ohio, for Appellant. Laurence R. Snyder, OFFICE OF THE OHIO ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

     MOORE, J., delivered the opinion of the court, in which GILMAN, J., joined. MERRITT, J. (pp. 47-49), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

     KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant James R. Goff ("Goff") appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Goff was convicted in Ohio state court in 1995 of

1

two counts of aggravated murder (each with one capital specification),[1] three counts of aggravated burglary, two counts of aggravated robbery, and one count of grand theft. He was sentenced to death.

The district court certified seventeen claims for appeal, but we are primarily concerned with only two. First, Goff asserts that the jury instructions given during the penalty phase of his trial regarding unanimity and mitigating factors were flawed. Second, Goff asserts that his appellate counsel was ineffective for failing to raise a claim during Goff's direct appeal to the Ohio Court of Appeals that Goff was denied his right, under Ohio law, to allocute before sentencing.

For the reasons discussed below, we conclude that Goff is entitled to relief on the basis of the second issue, but that recent Supreme Court precedent precludes his first issue. We conclude that Goff's remaining assignments of error are meritless. We therefore **REVERSE** the decision of the district court and **GRANT** Goff a conditional writ of habeas corpus based on Goff's ninth and twelfth assignments of error.

## I.  BACKGROUND

On January 24, 1995, a Clinton County, Ohio, grand jury indicted Goff on two counts of aggravated murder (each with a capital specification), three counts of aggravated burglary, two counts of aggravated robbery, and two counts of grand theft with specifications. Following a trial, Goff was convicted of all counts except for one count of grand theft and the grand-theft specifications. At the conclusion of the penalty-phase hearing, the jury recommended that Goff be sentenced to death. The trial judge then conducted his own weighing of the mitigating and aggravating factors and sentenced Goff to death. Goff appealed to the Twelfth District Court of Appeals for Clinton County, Ohio, which affirmed his convictions and sentence. *State v. Goff*, No. CA95-09-026, 1997 WL 194898, at *31 (Ohio Ct. App. Apr. 21, 1997). Goff then

---

[1]The two murder convictions were merged into one count of aggravated murder with an aggravated burglary specification.

appealed to the Ohio Supreme Court, which affirmed Goff's death sentence and made the following findings of fact:

> [Myrtle] Rutledge, an eighty-eight-year-old woman, was in the process of moving out of her old farmhouse and into a new doublewide trailer home that was built directly behind the farmhouse. Her daughter, Esther Crownover, had been helping her sort out items from the old house, in which she had lived for forty-seven years.

> Rutledge decided to purchase some new furniture for her new house, and on September 14, 1994, she and Crownover went to Butler Home Furnishings in Wilmington, Ohio. After purchasing a new mattress, box springs, chair, ottoman, and sofa, Rutledge made arrangements for the furniture to be delivered the next day.

> Butler Home Furnishings had employed appellant for furniture deliveries for about a year. Harold E. Butler, Jr., the son of the owner, would contact appellant when he had a delivery and then, depending on the item, would get another person to assist appellant with the delivery. Butler Furnishings had also used Manuel Jackson as a delivery person for the seven months prior to September 1994.

> Appellant and Jackson were contacted to make the delivery to Rutledge on September 15, 1994. When appellant and Jackson arrived with the furniture, Rutledge directed them to put the new furniture in the new house. Since there was no bed frame in the new house, appellant asked whether Rutledge wanted them to obtain the frame from the old house and assemble the bed in the new house. After they indicated that they would not charge Rutledge any additional money for this service, Rutledge took them into the old house, up to the second floor, and pointed out the bed frame that was to be used with the new bedding. The old house was in a state of disarray from the ongoing moving process. Jackson thought he saw appellant "snooping" through Rutledge's belongings.

> Appellant and Jackson disassembled the old bed, took the frame to the new house, and set up the new bed. While Jackson finished the assembly, appellant obtained Rutledge's signature on the delivery form.

> Later that afternoon, Rodney Rutledge, the victim's son, arrived at his mother's house around 4:00 p.m. to mow the lawn. She showed him her new furnishings that had been delivered that day. When he left (around 5:30 p.m.), his mother's car was parked in the driveway next to the house.

> On the night of September 15, Myrtle Rutledge spoke on the telephone to her sister (6:30-7:00 p.m.) and her sister-in-law (around 9:00

p.m.) concerning the upcoming family reunion on Saturday, September 17. On Friday, September 16, 1994, Rutledge's son drove past his mother's house six different times during the course of his employment. Each time his mother's car was not parked in the driveway next to the house. Rutledge's sister also drove past the house and noticed the car was not there.

On Saturday morning, Crownover went to Rutledge's home to pick her up for the reunion. The car was not there, and when her mother did not answer the door, Crownover assumed that she had already left for the reunion. When she arrived at the reunion her mother was not there. She went back to her mother's house, entered, and went upstairs to her mother's bedroom. There she found her mother's battered and naked body lying on the floor of the bedroom. A pool of blood was on the bed, as well as the floor area. After ascertaining that there was no pulse, she tried using the phone to call the police, but there was no dial tone. She covered her mother with a blanket and drove to the police station.

The police and an ambulance were dispatched. Once it was determined that Rutledge was dead, the police secured the scene and began a criminal investigation. Deputy Sheriff Fred W. Moeller, the crime scene investigator, determined that the door to the victim's house had been forced open. Someone had apparently tried to enter the home through a window, because the window screen was lying on the ground outside the house, but entry was not made though the window. The phone wires on the outside of the house were cut.

No fingerprints were found in the bedroom. In Moeller's opinion, the room had been cleaned. Other fingerprint smudges were found in the house, but never matched. There was no evidence of blood anywhere else in the house except the bedroom. Denise K. Rankin, a serologist, identified a pubic hair found at the scene as being consistent with a pubic hair obtained from appellant after his arrest.

After Moeller left the scene to return to the police station, he was notified that the victim's car was found on North High Street in the city of Wilmington. He went to the scene, and the keys to the car were found on the floor on the driver's side. A pink towel was on the front seat of the car, and no prints were found anywhere on the car. Moeller believed that someone had wiped down the car.

The deputy coroner testified that Rutledge died from blunt and sharp trauma to the head, neck, shoulders, and ankle. Her death also resulted from blood loss due to multiple stab wounds, one of which severed the carotid artery. The coroner was unable to determine the time of death.

When appellant and Jackson left Rutledge's house after delivering the furniture on September 15, they purchased some crack cocaine and went to appellant's house to smoke it. Appellant later returned the truck to the furniture store.

Jackson did not see appellant again until 1:00-1:30 a.m. the following morning when he saw him running through an alley. Jackson later saw him on Grant Street. Appellant had changed his clothes from earlier in the day when they had delivered the furniture.

Appellant asked Jackson whether he wanted to smoke some crack, showing him what Jackson thought was about $80 worth of crack. Jackson was with Tim Bart, and all three proceeded to appellant's house. After they smoked the crack, which took a couple of hours, Bart suggested stealing some meat to trade for more crack. They were going to walk to the store, when appellant indicated he knew where there was a car they could use, but it was stolen. Appellant said the car was on North High Street. Bart and Jackson opted not to use the stolen car, and they walked to Bob and Carl's Meat Store. Bart stole the meat, and he and appellant "took off."

Jackson saw appellant around noon the next day, and appellant asked him to tell anyone who asked, that he (appellant) had been with Jackson from 9:00 p.m. on September 15 until 3:00 a.m. on September 16.

Later, on September 17, Timothy Shaffer found appellant playing pool at a game room in Wilmington. Appellant, Shaffer, and David Walls ended up at Shaffer's trailer, where they smoked three to four "joints." All three left the trailer and went to buy some crack. After the purchase, Shaffer and appellant went to appellant's house to smoke the crack. Appellant wanted Shaffer to sign a note saying that he (Shaffer) helped in a crime committed on September 15, but Shaffer refused to sign. Appellant went and stayed at Shaffer's trailer until September 21.

While staying with Shaffer, appellant talked with him about Rutledge's death. Appellant asked Shaffer what he would do if he killed someone. Appellant then told him he stabbed a lady and bent the blade of the knife. He also choked her. Appellant then told Shaffer he took her car and left it in front of the Mulberry Hill Apartments. After wiping the steering wheel, he drove the car to North High Street, where he left it, and then bought about $90 worth of crack and smoked it. Appellant admitted that he went to Rutledge's house to rob her.

On September 21, Shaffer saw a newspaper article about the Rutledge murder and asked appellant to leave his trailer. About two weeks later, Shaffer received a letter from appellant telling him that his

(appellant's) life was in Shaffer's hands and to not tell anyone.  Shaffer eventually called Colonel Tim Smith at the sheriff's department, and turned over a pair of tennis shoes and a laundry basket belonging to appellant.  Shaffer ultimately told Smith all of what appellant had said about the murder.

Appellant was arrested on September 21, 1994 on a drug charge.  During the interrogation, appellant admitted that he had a crack habit, that he bought crack whenever he could, and that he would steal and trade items to buy crack.  He indicated that he delivered furniture to the Rutledge residence, but when questioned about the murder, appellant asked for an attorney and questioning ceased.

The state also presented three inmates, Jerry Lee Price, Danny Smith, and Keith Jones, to testify to various statements appellant had made to them regarding the Rutledge crime while incarcerated on the drug charge.  Smith's testimony was excluded, since he failed to identify appellant in court; however, both Price and Jones testified regarding the murder.

Jones's testimony was by far the most damaging.  Appellant told Jones that he had delivered furniture to an old lady in her late 80's.  She had given appellant some money when he put the new bed together and later that night he went back to get the rest of the money he saw she had.  Appellant entered through the kitchen and found Rutledge in the bedroom.  Appellant told him that Rutledge called him "Jimmy," so he "had to get rid of the bitch."  Jones asked him questions concerning the crime because Jones could not believe appellant could do such a thing to an old woman.  Appellant asserted that she had lived her life, and since she could send him to prison, he had to kill her.  After he took the money and the car, he went and bought crack.  Appellant ran into a friend and they went and smoked it.  Appellant said he killed her by himself, using a fishing tackle knife from his house.  He told Jones they would never find the knife because he got rid of it.  Jones wrote a letter to the prosecutor's office, although he was not sure he believed appellant, but that he (Jones) had an elderly mother and could not think of something like that happening to her.

*State v. Goff* (*Goff I*), 694 N.E.2d 916, 918-21 (Ohio 1998).  Goff filed a motion to reconsider in the Ohio Supreme Court, which denied the motion on July 22, 1998.  *State v. Goff*, 696 N.E.2d 1089 (Ohio 1998).  Goff then filed a petition for a writ of certiorari with the United States Supreme Court, which denied the writ on June 24, 1999.  *Goff v. Ohio*, 527 U.S. 1039 (1999).

Goff also filed a motion for postconviction relief pursuant to OHIO REV. CODE § 2953.21, which the state trial court denied on procedural and substantive grounds without an evidentiary hearing. *See State v. Goff* (*Goff II*), No. CA2000-05-014, 2001 WL 208845, at *1 (Ohio Ct. App. Mar. 5, 2001). The Ohio Court of Appeals affirmed this denial, *id*. at *10, and the Ohio Supreme Court declined review, *State v. Goff*, 749 N.E.2d 756 (Ohio 2001).

Additionally, Goff filed a motion for relief from judgment, making claims very similar to those raised in his motion for postconviction relief, which both the trial court and the Ohio Court of Appeals denied. *State v. Goff*, No. CA2000-10-026, 2001 WL 649820, at *1 (Ohio Ct. App. June 11, 2001). The Ohio Supreme Court again declined review. *State v. Goff*, 754 N.E.2d 261 (Ohio 2001).

Goff next applied to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, alleging ineffective assistance of appellate counsel, and the Ohio Court of Appeals denied the application on procedural and substantive grounds. *See State v. Goff* (*Goff III*), 784 N.E.2d 700, 701 (Ohio 2003). The Ohio Supreme Court affirmed this decision on March 19, 2003, noting that "Goff ha[d] failed to raise a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal before the court of appeals, as required by App.R. 26(B)(5)." *Id.* (internal quotation marks omitted) (second alteration in original).

In May 2002, Goff filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio, alleging twenty-five constitutional errors. Joint Appendix ("J.A.") at 9-72 (Goff Pet. for Writ). Without holding an evidentiary hearing, the district court denied each claim. *Goff v. Bagley* (*Goff IV*), No. 1:02-cv-307, 2006 WL 3590369 (S.D. Ohio Dec. 1, 2006). Goff filed a motion for a certificate of appealability ("COA"), and the district court certified seventeen claims for appellate review, including whether Goff received ineffective assistance of appellate counsel because his appellate counsel failed to raise the issue of Goff's right to allocution before sentencing. *Goff v. Bagley* (*Goff V*), No. 1:02-cv-307, 2007 WL

2601096, at *10-11, *15, *21 (S.D. Ohio Sept. 10, 2007).[2] We now consider each of Goff's arguments.

## II.  ANALYSIS

### A.  Standard of Review

"In a habeas corpus proceeding, this Court reviews a district court's legal conclusions *de novo* and its factual findings for clear error." *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir.) (internal quotation marks omitted), *cert. denied*, 130 S. Ct. 742 (2009).  Goff filed his habeas petition in May 2002, after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and, thus, AEDPA governs our review of Goff's claims.  *Lindh v. Murphy*, 521 U.S. 320, 326-27, 336 (1997).  AEDPA provides that

> (d)     An application for a writ of habeas corpus on behalf of a person
>         in custody pursuant to the judgment of a State court shall not be
>         granted with respect to any claim that was adjudicated on the

---

[2]The district court granted a COA regarding whether "petitioner's appellate attorneys provide[d] constitutionally ineffective assistance of counsel by failing to raise the . . . failure of trial counsel to recognize that James Goff was constitutionally entitled to allocution before sentencing." *Goff V*, 2007 WL 2601096, at *10-11.  However, because it is the duty of the sentencing court to ensure that the defendant is provided the right to allocution, at least one Ohio court has noted that trial counsel is not ineffective for failing to bring to the sentencing court's attention the fact that the court has not provided the defendant an opportunity to allocute.  *City of Defiance v. Cannon*, 592 N.E.2d 884, 887-88 (Ohio Ct. App. 1990) ("[O]nly the trial court has a duty with respect to affording a defendant the right to allocution.  Because counsel ha[s] no duty, [counsel's] omission to advise [is] . . . neither deficient nor prejudicial.").  Thus, under this view, appellate counsel is ineffective for failing to raise the sentencing court's failure to provide allocution, not for failing to raise a claim of ineffective assistance of trial counsel on the basis of the absence of allocution.

Even assuming that *Cannon* is a correct statement of Ohio law, *Cannon* does not prevent us from addressing the issue of whether Goff's appellate counsel were ineffective when they failed to raise the allocution issue.  As an initial matter, Goff has argued the ineffective-assistance-of-appellate-counsel/allocution issue both as a failure to raise the issue of trial counsel's ineffectiveness and as a failure to raise the right to allocution directly.  *See* Goff Br. at 79-80; Goff Reply Br. at 19.  Further, aside from the COA on the issue of ineffective assistance of appellate counsel, the district court granted a COA on the issue of allocution: "Were Petitioner Goff's constitutional rights violated when he was denied the right to allocution before sentencing?" *Goff V*, 2007 WL 2601096, at *15.  Under the two argument headings, Goff has consistently noted his right to allocution under Ohio law.  *See* J.A. at 53 (Pet. for Writ at 45); Goff Reply Br. at 19.  The district court discussed this issue as well.  *Goff IV*, 2006 WL 3590369, at *33.  Additionally, in his Ohio Rule of Appellate Procedure 26(B) application before the Ohio Court of Appeals, Goff reasserted his right to allocution under Ohio law.  J.A. at 1237-38 (Rule 26(B) Application at 4-5).  Therefore, we conclude that Goff's argument that his appellate counsel was ineffective for failing to raise the issue of allocution in Goff's direct appeal is encompassed by the COA.  *Cf. Hargrave v. McKee*, 248 F. App'x 718, 723-24 (6th Cir. 2007) (unpublished opinion) (analyzing a COA to include a general argument petitioner made in his briefs on appeal and before both the state court and the district court).

merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was *contrary to*, or involved *an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on *an unreasonable determination of the facts* in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphases added).  The Supreme Court has explained that

[u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Terry Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  We have stressed that "clearly established law under the Act encompasses more than just bright-line rules laid down by the Court.  It also clearly includes legal principles and standards enunciated in the Court's decisions." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002).  We apply a presumption of correctness to state court findings of fact, and the petitioner may rebut this presumption only "'by clear and convincing evidence.'"  *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001) (quoting 28 U.S.C. § 2254(e)(1); citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000)).

**B.  Jury Instructions**

In his first and second assignments of error, Goff argues that the state court's failure to provide clearer jury instructions on mitigation impermissibly required the jury to reject unanimously a sentence of death, based on unanimous mitigation findings, before considering a life sentence alternative and did not provide adequate guidance on

the use of mitigating factors.  While the instant appeal was pending, the United States Supreme Court granted certiorari and decided *Smith v. Spisak* (*Spisak III*), — U.S. —, 130 S. Ct. 696 (2010), *rev'g Spisak v. Mitchell* (*Spisak I*), 465 F.3d 684 (6th Cir. 2006), *vacated by Hudson v. Spisak*, 128 S. Ct. 373 (2007), *reinstated by Spisak v. Hudson* (*Spisak II*), 512 F.3d 852 (6th Cir. 2008), the resolution of which controls our disposition of Goff's first jury-instruction claim and counsels against our granting relief on the second.

### 1.    Jury Instructions Regarding "Acquit-first" and Unanimity in Mitigation Factors

In his first assignment of error, Goff relies heavily on this court's acquittal-first jury-instruction opinion in *Spisak I*, which the Supreme Court reversed in *Spisak III*, 130 S. Ct. at 681-84.  Indeed, Goff states in his brief that "the identical issue is presented here."  Goff Br. at 19.  Goff filed a pre-trial motion for a penalty-phase jury instruction that, "in essence, . . . [the jury] need not unanimously reject the recommendation of a death sentence before proceeding to consider the life sentences," specifically requesting an instruction that:

> You, the jury, should first consider whether to return a verdict of (recommend a sentence of) death.
>
> You must unanimously agree that the aggravating circumstances are sufficient to, and do outweigh, the mitigating circumstances in order to return a verdict (recommendation) of death.
>
> If you are unable to agree unanimously that a death sentence is appropriate under this standard of proof, you are to proceed to consider which of the life sentence verdicts (recommendations) to return.
>
> You are not required to determine unanimously that the death sentence is inappropriate before you consider the life sentences.

J.A. at 904-06 (Mot. for Penalty Phase Jury Instruction).  Goff also requested an additional instruction relating the lack of a unanimity requirement in finding mitigating factors.  *Id.* at 889-90 (Mot. to Instruct the Jury on the Lack of Requirement).  The trial court rejected both of Goff's proposed instructions, *id.* at 437, 445-46 (Penalty Phase Hr'g Tr. at 2442, 2450-51), and instructed the jury as follows:

In making your decision you will consider all the evidence, the arguments of counsel, and all other information and all other reports which are relevant to the nature and circumstances of the aggravating circumstances or to any mitigating factors including, but not limited to, the nature and circumstances of the offense, and 1) the history and character and background of the Defendant, 2) the youth of the Defendant, and 3) any other factors that are relevant to the issue of whether the Defendant should be sentenced to death.

You are to weigh the aggravating circumstances which you have already found against any mitigating factors which you find to exist. You are limited in your consideration solely to your findings in Count 1 and Count 2 relating to the death of Myrtle Rutledge and those aggravating circumstances which you have found to exist.

[Explaining findings related to Count 1 and Count 2] . . . .

Mitigating factors must be considered collectively when they are weighed against the aggravating circumstances. The Prosecution has the burden to prove beyond a reasonable doubt that the aggravating circumstance[s], of which the Defendant was found guilty, outweigh the factors in mitigation of imposing the death sentence. To outweigh means to weigh more than or to be more important than. The existence of mitigating factors does not preclude or prevent the death sentence, if you find beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. However, if you are not convinced by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors, then you must choose one of the two life sentences.

You shall recommend death only if you unanimously find by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. [I]f you do not so find, you shall unanimously sign a verdict for either a sentence of life with parole eligibility after serving 20 years of imprisonment or a sentence of life with parole eligibility after serving 30 full years of imprisonment. Verdict forms with these three options will be furnished to you.

*Id.* at 710-12 (Penalty Phase Hr'g Tr. at 2714-16). As to the verdict forms, the trial court instructed the jury:

At this point I want to make a few comments with regard to the verdict forms. You will have you in the Court [sic] six verdict forms. They read as follows, "In the Court of Common Pleas, Clinton County, Ohio," they will have the same heading, "State of Ohio v. James Goff, Case No. 95 5 008, Verdict, Recommendation of Death," and then there

is a recitation of the specification to Count 1, and it says, "We, the Jury, being duly impaneled, do hereby find beyond a reasonable doubt that the aggravating circumstance outweighs the mitigating factors and recommend to the Court the imposition of the death penalty." If this is your verdict form you would date it and sign it on one of the lines provided.

The next one also refers to Count 1, same heading, but it reads, "We, the Jury being duly impaneled, do not find beyond a reasonable doubt that the aggravating circumstance outweighs the mitigating factors and recommend to the Court that the Defendant receive life imprisonment with parole eligibility after serving 30 full years." If this is your verdict, then you would date it and you would sign it.

The next one has the same heading, "Specification to Count 1, Verdict, Life Imprisonment after 20 full years." It reads, "We the Jury being duly impaneled do not find beyond a reasonable doubt that the aggravating circumstance outweighs the mitigating factors and recommend to the Court that the Defendant receive life imprisonment with parole eligibility after serving 20 full years." Again, if this is your verdict form then you would date it and each of you would sign it.

Those are the verdict forms with regard to Count -- the specification to Count 1. The same three verdict forms exist for specification to Count 2. Again, the "Specification to Count 2" is listed at the top of the page. It says -- you would have three forms, "Verdict, Life Imprisonment After 20 Full Years;["] ["]Verdict, Life Imprisonment After 30 Full Years;" and "Verdict, Recommendation of Death."

Each verdict form, if that is your verdict, then you would date it and you would sign it. If it's the verdict for Recommendation of Death, if that's your verdict form, each of you must date it and sign it. If it's Life Imprisonment After 30 Full Years, you would date it and sign it, and if it's Life Imprisonment After 20 Full Years, then you would date it and you would sign it.

. . . .

. . . When all 12 of you agree on a verdict, all of you should sign the appropriate form in ink, as I've already indicated to you, and advise the Bailiff and you will then be returned to the Courtroom.

*Id.* at 717-19 (Penalty Phase Hr'g Tr. at 2721-23) (first alteration in original).

On appeal, Goff presents a single argument that the trial court impermissibly utilized an acquittal-first jury instruction coupled with an instruction requiring unanimity

in finding mitigation factors, and that these instructions were unconstitutional under *Spisak I*. The Ohio Supreme Court rejected both the acquittal-first and mitigation-unanimity arguments on direct appeal, specifically finding that the instructions were not invalid under *State v. Brooks*, 661 N.E.2d 1030, 1040-42 (Ohio 1996), even though Goff was tried six months before the *Brooks* decision, and that "[t]he jury was never told that it had to make a unanimous finding on the individual factors before weighing them." *Goff I*, 694 N.E.2d at 921-22. The Ohio Supreme Court concluded that "the 'substance' of what the jury must determine was included in the charge given; therefore, [Goff] was not prejudiced." *Id.* at 922. The district court also rejected Goff's arguments, finding that the instructions did not violate the Supreme Court's opinions in *Mills v. Maryland*, 486 U.S. 367 (1988), and *McKoy v. North Carolina*, 494 U.S. 433 (1990), and that this court's prior decision in *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003), while not a Supreme Court precedent, was also distinguishable. *Goff IV*, 2006 WL 3590369, at *6-10.

Because we are constrained by *Spisak III*, we agree with the district court. We conclude that the jury instructions and verdict forms that Goff's trial court utilized are conceptually indistinguishable from those at issue in *Spisak III*, *see Spisak III*, 130 S. Ct. at 682-84; *Spisak I*, 465 F.3d at 708-11, as Goff acknowledges in his brief. *See* Goff Br. at 19 ("*Spisak* is significant since the identical issue is presented here."). Therefore, we are constrained to follow the *Spisak III* Court's reasoning and to conclude that the jury instructions properly "focused only on the overall balancing question[,] [a]nd the instructions repeatedly told the jury to conside[r] all of the relevant evidence." *Spisak III*, 130 S. Ct. at 684 (third alteration in original); *see also Hartman v. Bagley*, 492 F.3d 347, 362-65 (6th Cir. 2007) (distinguishing case from *Davis* and *Spisak I*), *cert. denied*, 128 S. Ct. 2971 (2008). Goff is not entitled to relief on this claim.

Although a challenge to the jury instructions based on the perceived requirement "'to unanimously reject a death sentence before considering other sentencing alternatives'" might still be available on AEDPA habeas review after the Court's opinion

in *Spisak III*,[3] *see Spisak III*, 130 S. Ct. at 684 (quoting *Spisak I*, 465 F.3d at 709); *id.* at 688-91 (Stevens, J., concurring), neither Goff nor any previous court below "referred to *Beck v. Alabama*, 447 U.S. 625 (1980), or identified any other precedent from th[e Supreme] Court setting forth this rule," and the Court "ha[s] not, however, previously held jury instructions unconstitutional for this reason,"[4] *id.* at 684 (majority opinion). Thus, this court need not decide whether any further arguments on this ground could invalidate Goff's jury instructions. *See United States v. Hall*, 549 F.3d 1033, 1042 (6th Cir. 2008).

### 2. Refusal to Instruct Jury on Meaning of Mitigating Factors

In assignment of error two, Goff argues that the trial court committed a constitutional error in refusing to instruct the jury on the meaning of mitigating factors because the instruction given provided "no standard upon which to base their decision" and "le[ft] the jury with the impression that they [we]re to consider mitigation as lessening blame or culpability." Goff. Br. at 26. Goff requested the following instruction:

> Mitigating factors are factors that, while they do not justify or excuse the crime, nevertheless in fairness, sympathy and mercy, may be considered by you, as they call for a penalty less than death, or lessen the appropriateness of a sentence of death.

---

[3] Goff also relies on this court's prior opinion in *Davis*, as did the *Spisak I* panel, for this proposition. *See Spisak III*, 130 S. Ct. at 689 (Stevens, J., concurring) (noting the *Spisak I* panel relied on *Davis* for its erroneous conclusion that *Mills* clearly established that an acquittal-first instruction is unconstitutional). Although the trial court's unanimity instruction here, given after the instructions related to the verdict forms, J.A. at 719 (Penalty Phase Hr'g Tr. at 2723), does somewhat resemble the unanimity instruction rejected in *Davis*, 318 F.3d at 684, we conclude that any such argument relying on *Mills* is now foreclosed under *Spisak III*, and we further note that the instructions and verdict forms at issue here are distinguishable from those in *Davis*, *see Davis*, 318 F.3d at 689-90; *see also Hartman*, 492 F.3d at 362-65. Additionally, we note that the *Davis* opinion was not decided until 2003, almost ten years after Goff's trial. *See Davie v. Mitchell*, 547 F.3d 297, 313-15 (6th Cir. 2008) (pre-*Spisak III* case rejecting petitioner's ability to rely on the *Davis* court's *Mills* argument for alleged acquittal-first instruction because not clearly established), *cert. denied*, 130 S. Ct. 503 (2009).

[4] Both the *Spisak III* majority opinion and Justice Stevens's concurring opinion held "that *Mills* does not clearly establish that the [acquittal-first jury] instructions at issue were unconstitutional." *Spisak III*, 130 S. Ct. at 689 (Stevens, J., concurring) (citing *Davis*, 318 F.3d at 689, as the source of the *Spisak I* court's reliance on *Mills*).

J.A. at 896-98 (Mot. to Alter Definition of Mitigating Circumstances). The trial court rejected Goff's alternative instruction, *id.* at 441-42 (Penalty Phase Hr'g Tr. at 2446-47), and instructed the jury according to OHIO REV. CODE § 2929.04(B)-(C)[5] as follows:

> In making your decision you will consider all the evidence, the arguments of counsel, and all other information and all other reports which are relevant to the nature and circumstances of the aggravating circumstances or *to any mitigating factors including, but not limited to*, the nature and circumstances of the offense, and 1) the history and character and background of the Defendant, 2) the youth of the Defendant, *and 3) any other factors that are relevant to the issue of whether the Defendant should be sentenced to death.*
>
> You are to weigh the aggravating circumstances which you have already found against *any mitigating factors* which you find to exist. . . .
>
> . . . .
>
> Mitigating factors must be considered collectively when they are weighed against the aggravating circumstances. The Prosecution has the

---

[5]OHIO REV. CODE § 2929.04(B)-(C) provides:

(B)    If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt . . . , the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

    (1)    Whether the victim of the offense induced or facilitated it;

    (2)    Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

    (3)    Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;

    (4)    The youth of the offender;

    (5)    The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

    (6)    If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

    (7)    Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

(C)    The defendant shall be given great latitude in the presentation of evidence of the factors listed in division (B) of this section and of any other factors in mitigation of the imposition of the sentence of death.

    The existence of any of the mitigating factors listed in division (B) of this section does not preclude the imposition of a sentence of death on the offender but shall be weighed pursuant to divisions (D)(2) and (3) of section 2929.03 of the Revised Code by the trial court, trial jury, or the panel of three judges against the aggravating circumstances the offender was found guilty of committing.

Amendments to the language of § 2929.04 since Goff's trial are not relevant here.

burden to prove beyond a reasonable doubt that the aggravating circumstance[s], of which the Defendant was found guilty, outweigh the factors in mitigation of imposing the death sentence.  To outweigh means to weigh more than or to be more important than.  The existence of mitigating factors does not preclude or prevent the death sentence, if you find beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.  However, if you are not convinced by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors, then you must choose one of the two life sentences.

J.A. at 710-12 (Penalty Phase Hr'g Tr. at 2714-16) (emphases added).

The Ohio Supreme Court rejected Goff's argument on direct appeal, concluding that a failure to define "mitigation" was not prejudicial error because "[t]he trial court defined what factors the jury was to consider, and implicit in the trial court's instruction was that the factors set forth by the defense were factors relevant to whether appellant should be sentenced to death." *Goff I*, 694 N.E.2d at 922; *id.* at 923 (citing *Buchanan v. Angelone*, 522 U.S. 269 (1998)).  The district court also rejected Goff's argument on the grounds that the instruction given did not violate state law and that the Constitution did not require the requested mitigation definition. *Goff IV*, 2006 WL 3590369, at *11-12.  We agree.

"The Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner." *Boyde v. California*, 494 U.S. 370, 377-78 (1990); *Buell v. Mitchell*, 274 F.3d 337, 353 (6th Cir. 2001).  Because the Supreme Court has held that "the state may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence," *Buchanan*, 522 U.S. at 276 (citing *Johnson v. Texas*, 509 U.S. 350, 362 (1993); *Penry v. Lynaugh*, 492 U.S. 302, 326 (1989); *Franklin v. Lynaugh*, 487 U.S. 164, 181 (1988)), the issue is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence," *Boyde*, 494 U.S. at 380.  "Any barrier to such consideration [of mitigating evidence] must fail." *McKoy*, 494 U.S. at 371.  However, "'[o]n habeas review, errors on instructions are not reviewable unless they deprive a

defendant of constitutional due process.'" *Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003) (quoting *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000)).

In *Buchanan*, the Supreme Court explicitly stated that "we have never gone further and held that the state must affirmatively structure in a particular way the manner in which juries consider mitigating evidence." *Buchanan*, 522 U.S. at 276.  The Court rejected the defendant's argument that the trial court should have included additional explanations with the state's pattern instruction, specifically a further explanation of the concept of mitigation stating, "'[i]n addition to the mitigating factors specified in other instructions, you shall consider the circumstances surrounding the offense, the history and background of [the defendant,] and any other facts in mitigation of the offense.'" *Id.* at 273 (first alteration in original).  The Court held that a specific instruction "on the concept of mitigating evidence generally" is not constitutionally required.  *Id.* at 270, 279.  Here, as the Ohio Supreme Court concluded, the trial court's instruction essentially tracked the language of the state-law jury instruction, which itself provided more general information on the concept of mitigation than the challenged "all the evidence" instruction upheld in *Buchanan*.[6] *See State v. Holloway*, 527 N.E.2d 831, 834-36 (Ohio 1988) (looking to § 2929.04(B)(7) for proper definition of mitigating factors and finding trial court's use of different definition in subsequent written opinion was harmless error in part because jury was given proper § 2929.04(B) instruction at time).  "Where the trial court instructs the jury in accordance with state law and sufficiently addresses the matters of law at issue, no error results and the petitioner is not entitled to habeas relief." *White v. Mitchell*, 431 F.3d 517, 534 (6th Cir. 2005).

Contrary to Goff's assertion, we conclude that the instruction given, considered in the context of the entire instructions and proceedings, *see Boyde*, 494 U.S. at 377-78, 380-84, did not fail to provide the jury with a "standard upon which to base their decision" or "leave[] the jury with the impression that they [we]re to consider mitigation as lessening blame or culpability," Goff. Br. at 26, rather than as relevant to lessen the

---

[6]Although *Buchanan* was decided after Goff's conviction and thus is not controlling precedent under AEDPA, *see Mason*, 320 F.3d at 638 n.19, the case is instructive because the Court therein relied on its precedents that were in effect at the time of Goff's conviction, *see Buchanan*, 522 U.S. at 275-78.

sentence imposed.  Neither the use of the instruction given nor the failure to use the proposed instruction violated clearly established federal law under either the Eighth Amendment or the Due Process Clause.  *See Spisak III*, 130 S. Ct. at 683 (finding similar instructions sufficiently "explained the concept of a 'mitigating factor'"); *Mason*, 320 F.3d at 638-39 (holding that Supreme Court precedent prior to 1994 conviction "did not clearly establish a defendant's due process right to a jury instruction on the definition of mitigation" and rejecting exact same argument); *Buell*, 274 F.3d at 353 (upholding similar, but more limited, instruction against challenge that mitigating factors were not appropriately defined).  Goff is not entitled to relief on this claim.

## C.  Ineffective Assistance of Appellate Counsel

On the first appeal of right, a defendant is entitled to effective assistance of appellate counsel.  *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 1986 (2009).  As we have previously stated,

> [c]laims of ineffective assistance of [appellate] counsel are judged under the *Strickland* standard, which requires that the appellant affirmatively establish (1) that counsel's performance was objectively deficient; and (2) prejudice, which means that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id*. (internal quotation marks omitted); *Mason v. Mitchell*, 543 F.3d 766, 772 (6th Cir. 2008) ("Claims of ineffective assistance of counsel have 'two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.'" (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003))), *cert. denied*, 130 S. Ct. 492 (2009).  "To establish that counsel was deficient, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Smith*, 567 F.3d at 257 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Prejudice is shown if "there is 'a reasonable probability that, but for his counsel's [failings] . . . , [the defendant] would have prevailed on his appeal.'" *Mapes v. Tate* (*Mapes II*), 388 F.3d 187, 194 (6th Cir. 2004) (alterations in original) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

In his ninth assignment of error, Goff contends that he received ineffective assistance of appellate counsel due to appellate counsel's failure to raise the following issues on direct appeal: (1) the trial court's failure to afford Goff his right to allocution; (2) trial counsel's failure to recognize that the alternate juror substituted midstream during the penalty-phase hearing tainted that hearing; (3) trial counsel's failure to recognized the need for a principal-offender instruction during the penalty phase; (4) trial counsel's failure to request that the trial court give a jury instruction regarding the credibility of informants/accomplices; (5) ineffective assistance of trial counsel for informing the jury during voir dire that Goff would not testify at trial; (6) trial counsel's failure properly to prepare the psychologist who testified at the penalty-phase hearing; (7) trial counsel's failure to exclude reference to Goff's request for an attorney during the guilt phase; and (8) trial counsel's failure to raise an actual-conflict issue. None of these claims are specifically argued under this assignment of error; rather, five of the arguments are presented in conjunction with other assignments of error. The three arguments not so presented—arguments six, seven, and eight—are waived on appeal. *See United States v. Hall*, 549 F.3d 1033, 1042 (6th Cir. 2008) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006)) (alteration in original)).[7] Each of the remaining arguments are addressed below.

---

[7]Even if these arguments were not waived, we would conclude that they are meritless. First, Goff's claim that trial counsel did not properly prepare the psychologist, Dr. Jeffery Smalldon, is belied by the record. Review of the penalty-phase transcript reveals that Dr. Smalldon was competent and prepared, testifying extensively about both meetings that he had with Goff and Goff's family and about his findings. J.A. at 572-622 (Penalty Phase Hr'g Tr. at 2577-627). Second, although it is true that, during the guilt phase, the prosecutor elicited from two police officers the fact that Goff had requested an attorney, Goff cannot show that he was prejudiced by appellate counsel's failure to raise this issue—there is no evidence that there was any likelihood that Goff's appeal would have ended differently had his appellate counsel raised this issue. Lastly, the record reveals that no actual conflict of interest was present in Goff's case. One of the prosecutors directly involved in Goff's prosecution, as well as two other prosecutors not directly involved with the case, had previously served as Goff's guardian ad litem. This fact was discussed thoroughly by the defense, the prosecution, and the court when it was brought to the court's attention. Through this conversation, it became clear, as the district court noted, that "none of the prosecutors had learned any information while representing petitioner as guardians *ad litem* that they could have used against him, or otherwise put to improper use, in prosecuting him for the aggravated murder of Myrtle Rutledge." *Goff IV*, 2006 WL 3590369, at *35 (citing Penalty Phase Hr'g Tr. at 2461, 2466-67 (J.A. at 456, 461-62)). Thus, there was no actual conflict of interest requiring recusal.

### 1. Right to Allocution

In his ninth and twelfth assignments of error, Goff contends that he received ineffective assistance of appellate counsel because his appellate counsel did not raise the failure of the trial court to afford Goff his right to allocute before sentencing. Bagley contends that this claim is procedurally defaulted[8] and that, on the merits, this claim fails because (1) there is no constitutional right to allocution, and (2) Goff chose not to make an unsworn statement to the jury during the penalty phase, which allegedly discharged the trial court's duty with regard to allocution. We disagree with Bagley's contentions and conclude that Goff is entitled to relief on this ground.

Bagley's contention that Goff's claim must fail because there is no constitutional right to allocution misconstrues the effective-assistance framework. Although it is correct, as the district court noted, that "there is no right to allocution under the federal constitution," *Goff IV*, 2006 WL 3590369, at *33 (citing, inter alia, *Cooey v. Coyle*, 289 F.3d 882, 912 (6th Cir. 2002)), there is a constitutional right to the effective assistance of appellate counsel, *see, e.g.*, *Mahdi*, 522 F.3d at 636. If it was both deficient and prejudicial for Goff's appellate counsel to fail to raise the allocution claim, then Goff's constitutional right to the effective assistance of counsel on appeal has been violated, regardless of the fact that counsel's underlying failure is a matter of state law. *See Mason v. Hanks*, 97 F.3d 887, 892-94 (7th Cir. 1996) (concluding that the fact that an ineffective-assistance-of-appellate-counsel claim is based on a failure to pursue certain state-law claims "poses no impediment to [a petitioner's] claim of ineffectiveness"); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) ("On the one hand, the issue

---

[8]As to Bagley's procedural-default argument, although Goff did not raise this issue on direct appeal, he did raise it in his Ohio Rule of Appellate Procedure 26(B) motion. The Ohio Supreme Court rejected the claim *on the merits*, concluding that "Goff ha[d] failed to raise 'a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal' before the court of appeals, as required by App.R. 26(B)(5)." *Goff III*, 784 N.E.2d at 701 (second alteration in original). Thus, this claim is not defaulted for purposes of habeas review. *Haliym v. Mitchell*, 492 F.3d 680, 688–93 (6th Cir. 2007) (concluding procedural default did not apply, despite untimely Ohio Rule of Appellate Procedure 26(B) motion, because "an Ohio court's finding that there is 'no genuine issue,' which denies the *Murnahan* [Rule 26(B)] application at stage one of the two stage procedure, is a determination on the merits for the purpose of excusing procedural default"); *James v. Brigano*, 470 F.3d 636, 640-42 (6th Cir. 2006) (holding that a claim was not procedurally defaulted when a defendant raised the claim in an Ohio Rule of Appellate Procedure 26 motion and the Ohio Court of Appeals rejected the claim on the merits).

of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension . . . . On the other hand, the validity of the claim that Alvord's appellate counsel failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law." (citations omitted)), *superseded by statute on other grounds*; *see also Bedford v. Collins*, 567 F.3d 225, 237 (6th Cir. 2009) ("[T]he invocation of this state-law right [to allocution] could implicate the Sixth Amendment if the prosecution violated state-law rules about the allocution procedure and defendant's counsel unreasonably failed to object."), *petition for cert. filed* (U.S. Jan. 15, 2010) (No. 09-8671); *Reutter v. Sec'y for Dep't of Corr.*, 232 F. App'x 914, 915 (11th Cir.) (unpublished opinion) ("Even though [petitioner]'s ineffective-assistance-of-appellate-counsel claim was based on counsel's failure to raise a state-law issue, . . . the ineffective-assistance claim itself was a federal constitutional claim." (citing *Alvord*, 725 F.2d at 1291)), *cert. denied*, 552 U.S. 956 (2007); *cf. Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999) (citing *Mason v. Hanks*, 97 F.3d at 893-94); *Lewis v. Smith*, 100 F. App'x 351, 356 (6th Cir.) (same), *cert. denied*, 543 U.S. 877 (2004). We conclude that counsel's performance was both deficient and prejudicial.

Ohio law provides all criminal defendants with the right to allocution before a sentence is imposed. OHIO CRIM. R. 32(A)(1) ("At the time of imposing sentence, the court shall . . . address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.")[9]; *State v. Campbell*, 738 N.E.2d 1178, 1188 (Ohio 2000). It is the duty of the sentencing court to inform the defendant of this right to allocution, and failure to do so is typically reversible error. *See Campbell*, 738 N.E.2d at 1190. At the time of Goff's sentencing, there was a substantial amount of caselaw confirming this fact. *See, e.g.*, *Silsby v. State*, 164 N.E. 232 (Ohio 1928) (holding that an Ohio statute "impose[s] a mandatory duty upon a trial judge to ask an accused person whether he has anything

---

[9]Ohio Rule of Criminal Procedure 32 was amended in 1998; however, the pre-1998 version, in effect at the time of Goff's sentencing, did not differ materially from the current version. *See* OHIO CRIM. R. 32(A)(1) (1993) (amended 1998) ("Before imposing sentence the court . . . shall address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.").

to say why judgment should not be pronounced against him" and that failure to discharge that duty requires reversal and remand for resentencing (syllabus)); *State v. Hays*, 442 N.E.2d 127, 129 (Ohio Ct. App. 1982) (noting that OHIO CRIM. R. 32(A)(1) "require[s] that the accused be granted an opportunity to be heard in mitigation of punishment" (citing *Silsby*, 164 N.E. 232)); *see also City of Defiance v. Cannon*, 592 N.E.2d 884, 888 (Ohio Ct. App. 1990) (stating that OHIO CRIM. R. 32(A)(1) and OHIO REV. CODE § 2947.05[10] both "clearly mandate[] that a court give . . . the defendant an opportunity to speak prior to the imposition of sentence," and that the trial court's failure to ask the defendant if he or she wishes to allocute requires "remand[] for the sole purpose of resentencing" (citing, inter alia, *Silsby*, 164 N.E. 232)); *accord State v. Hawkins*, No. 65344, 1994 WL 505279, at *2 (Ohio Ct. App. Sept. 15, 1994) (unpublished opinion) (same); *City of Cleveland v. Justice*, Nos. 56883, 56884, 1990 WL 43676, at *5 (Ohio Ct. App. Apr. 12, 1990) (unpublished opinion) (same); *State v. Priest*, No. 86 CA 29, 1987 WL 10638, at *1 (Ohio Ct. App. Apr. 28, 1987) (unpublished opinion) (same); *State v. Sullivan*, No. E-80-54, 1981 WL 5643, at *3 (Ohio Ct. App. June 12, 1981) (unpublished decision) (same).

In the instant case, there is no evidence in the record that the state trial court (common pleas court) ever addressed Goff's right to allocution. Under Ohio law at the time of Goff's direct appeal, this omission was reversible error. Failure on the part of Goff's appellate counsel to raise such an obviously winning claim clearly falls below an objective standard of reasonableness—deficiency is established by the fact that appellate counsel failed to raise the allocution issue on appeal in the face of overwhelming

---

[10]OHIO REV. CODE § 2947.05 was repealed on July 1, 1996. Prior to that date, § 2947.05 stated, in relevant part:

> Before sentence is pronounced, the court shall inform the defendant of the verdict of the jury or of the finding of the court and shall ask the defendant whether he has anything to say as to why judgment should not be pronounced against him.

OHIO REV. CODE ANN. § 2947.05 (repealed 1996). Goff was sentenced in August 1995; thus, § 2947.05 would have applied to Goff's sentencing. The state courts' application of § 2947.05 was firmly established at the time of Goff's sentencing. *See, e.g.*, *City of Columbus v. Herrell*, 247 N.E.2d 770, 774 (Ohio Ct. App. 1969) (holding that a trial court's failure to comply with § 2947.05 required a remand for resentencing, consistent with *Silsby*, 164 N.E. 232); *City of Columbus v. Shuffelt*, 159 N.E.2d 238, 239 (Ohio Ct. App. 1958) (same); *State v. Ausberry*, 82 N.E.2d 751, 751–52 (Ohio Ct. App. 1948) (same); *see also State v. Baker*, 177 N.E.2d 348, 352 (Ohio Ct. App. 1960) (granting motion for leave to appeal to allow the defendant to raise on appeal the trial court's failure to comply with § 2947.05).

caselaw regarding the right to allocute. Moreover, this same caselaw holds that a sentencing court's failure to provide the right to allocution requires a remand for resentencing, thereby establishing prejudice. *See Mapes II,* 388 F.3d at 194 (explaining that prejudice exists if there is a reasonable probability that the appeal would have been successful had the claim been raised). Thus, we conclude that there is a reasonable probability that, but for appellate counsel's unprofessional errors, the result of Goff's direct appeal would have been different. The Ohio Supreme Court's conclusion that Goff failed to raise a genuine issue of material fact regarding ineffective assistance of appellate counsel constitutes an unreasonable application of Supreme Court precedent.

Bagley contends that Goff decided not to give an unsworn statement and that this decision waived his right to allocution. This argument is meritless. In addition to the right to allocution before the court imposes sentence discussed above, capital defendants in Ohio also have the right to make an unsworn statement at the penalty phase. OHIO REV. CODE ANN. § 2929.03(D)(1) ("The court, and the trial jury if the offender was tried by a jury, . . . shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. . . . If the offender chooses to make a statement, the offender is subject to cross-examination only if the offender consents to make the statement under oath or affirmation.")[11]; *see also Campbell*, 738 N.E.2d at 1190. Although "[§] 2929.03(D)(1) permits a capital defendant to make a penalty-phase statement without oath or cross-examination . . . [,] an unsworn statement under [§] 2929.03(D)(1) *is not* an allocution under the rule [OHIO CRIM. R. 32(A)(1)]." *Campbell*, 738 N.E.2d at 1190 (emphasis added) (citing *State v. Reynolds*, 687 N.E.2d 1358, 1372 (Ohio 1998)). "The penalty phase in a capital case is not a substitute for a defendant's right of allocution [at sentencing]." *Reynolds*, 687 N.E.2d at 1372. The right to allocution is associated with the sentencing proceeding before the judge, and "[t]he purpose of allocution is to allow the defendant an additional opportunity to state any further information which the judge may take into consideration when determining the sentence to be imposed." *Cannon*,

---

[11]OHIO REV. CODE § 2929.03 has been amended several times since Goff's sentencing; however, the pertinent language of (D)(1) remains unaltered.

592 N.E.2d at 888. Moreover, "[n]o authority requires a trial court to inform a capital defendant of his right to make an unsworn, penalty-phase statement." *Campbell*, 738 N.E.2d at 1190.

Bagley correctly notes that the penalty-phase transcript reflects that a conference occurred wherein the parties were slated to discuss Goff's "rights relative to giving [an] unsworn statement." J.A. at 663 (Penalty Phase Hr'g Tr. at 2668). The contents of that conference reveal that Goff's trial counsel had advised him of his right to make an unsworn statement to the jury, and that Goff declined to so address the jury.[12] Contrary to Bagley's contention, at the conference the trial judge did not inform Goff of his right to give an unsworn statement; only Goff's counsel addressed him at the conference, although Goff did waive his right to make an unsworn statement on the record. Even if the trial judge had been the one to address Goff relative to making an unsworn statement, the right to make an unsworn statement to the jury at the penalty phase is not equivalent to the right of allocution before the judge imposes sentence. *Campbell*, 738 N.E.2d at 1190; *Cannon*, 592 N.E.2d at 888. Thus, even if the sentencing court informed Goff of his right to give an unsworn statement to the jury at the penalty phase, such information could not discharge the sentencing court's duty to inform Goff about his right to allocution before sentencing by the judge, and any wavier by Goff of his right to give an unsworn statement to the jury would not have impacted his right to allocute. *See Campbell*, 738 N.E.2d at 1188-90 ("[I]n this context [where the trial court failed to inform the defendant of the right to allocution], we find the doctrine of waiver inapplicable."). Accepting Bagley's contention—"that Goff chose not to make an unsworn statement to the jury," Bagley Br. at 74—we nevertheless conclude that the trial court failed in its duty to inform Goff of his right to allocute before sentencing by the judge.

Accordingly, we hold that Goff's appellate counsel was ineffective for failing to raise on direct appeal the issue of Goff's right to allocution before sentencing and that

---

[12]From the parties' briefing and arguments on appeal, we were advised that this conference was sealed. However, the state court had granted the parties' joint motion to unseal this portion of the transcript, and we have obtained and reviewed the three transcript pages at issue.

the opposite conclusion reached by the Ohio Supreme Court in rejecting Goff's Ohio Rule of Appellate Procedure 26(B) application on the merits constitutes an unreasonable application of federal law.

### 2. Substitution of Alternate Juror During Penalty Phase

In his ninth and fourteenth assignments of error, Goff asserts that trial counsel caused a constitutional, structural error when it allowed an alternate juror, who did not deliberate with the jury during the guilt phase, to take the place of a sitting juror during the penalty phase and that appellate counsel was ineffective for failing to raise this issue on direct appeal. Goff presented this claim in an Ohio Rule of Appellate Procedure 26(B) motion to reopen his direct appeal, claiming that ineffective assistance of appellate counsel established cause and prejudice for failing to raise the issue on direct appeal.[13] The Ohio Court of Appeals denied the motion and the Ohio Supreme Court affirmed this denial, concluding that "Goff . . . failed to raise a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal before the court of appeals, as required by App.R. 26(B)(5)." *Goff III*, 784 N.E.2d at 701 (internal quotation marks omitted) (alteration in original). The district court rejected Goff's underlying claim of trial-counsel error as procedurally defaulted because Goff did not establish that his appellate counsel was ineffective and thus could not establish cause and prejudice for his failure to raise the underlying claim on direct appeal. *Goff IV*, 2006 WL 3590369, at *29-30. We also reject Goff's claim.

As an initial matter, Goff has cited no caselaw to support his argument that the substitution of an alternate juror—who was present for both the guilt-phase and penalty-phase hearings but did not participate in the guilt-phase deliberation—for a sitting juror before the commencement of penalty-phase deliberations is a constitutional violation, nor could we find any. Moreover, Goff's repeated assertion that the substitution of the

---

[13] Ohio Rule of Appellate Procedure 26(B) "governs applications by a criminal defendant to reopen an appeal 'based on a claim of ineffective assistance of appellate counsel.'" *James*, 470 F.3d at 640 (quoting OHIO APP. R. 26(B)(1)). The Ohio courts should grant an Ohio Rule of Appellate Procedure 26(B) motion "'if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.'" *Id.* (quoting OHIO APP. R. 26(B)(5)).

juror caused Goff not to be convicted by a unanimous jury is also unsupported by caselaw and defies common sense. A unanimous jury convicted Goff at the end of the guilt-phase proceedings; no later change in the make-up of the jury could alter that fact. Thus, Goff has not established that the substitution of the alternate juror, in and of itself, caused a constitutional violation.

As to Goff's ineffective-assistance-of-appellate counsel claim, at the time of Goff's direct appeal, the Ohio Supreme Court, in a case with materially indistinguishable facts, had held that it did not violate state law to replace a sitting juror with an alternate juror between the guilt and penalty phases. *See State v. Hutton*, 559 N.E.2d 432, 442-45 (Ohio 1990). Additionally, Goff has not asserted that the substitution procedure used in his case violated state law. Thus, there seems no likelihood that, had Goff's appellate counsel raised this issue, the result of his appeal would have been different, and we cannot say that Goff's appellate counsel was ineffective for not raising a claim that had little to no possibility of success. *See Valentine v. United States*, 488 F.3d 325, 338-39 (6th Cir. 2007) (rejecting a claim of ineffective assistance of appellate counsel where the underlying claim "had little probability of success"), *cert. denied*, 128 S. Ct. 1311 (2008). We conclude that Goff is not entitled to relief on this claim.

### 3. Principal-Offender Instruction

In his ninth and fifteenth assignments of error, Goff contends that the trial court should have instructed the jury regarding the definition of principal offender and that appellate counsel was ineffective for failing to raise this issue on appeal. Goff raised the underlying claim in his failed Ohio Rule of Appellate Procedure 26(B) motion. The district court also rejected the claim. We conclude that this claim is meritless.

Goff's argument under these assignments of error is confusing, to say the least. It appears that Goff is asserting that, at the guilt phase and at the penalty phase, the jury was not (1) instructed regarding the requirement that Goff be a principal offender in order to be death eligible; (2) instructed regarding the definition of principal offender; or (3) provided verdict sheets that reflected the principal-offender requirement. The record reveals that Goff's assertions are baseless.

According to Ohio law, "[t]o be eligible for the death penalty under R.C. [OHIO REV. CODE §] 2929.04(A)(7) as 'the principal offender,' the defendant must have been the actual killer." *State v. Taylor*, 612 N.E.2d 316, 325 (Ohio 1993). In the context of aggravated murder, principal offender has been defined as "one who personally performs every act constituting the offense." *State v. Sneed*, 584 N.E.2d 1160, 1168 (Ohio 1992) (internal quotation marks omitted). At the guilt phase of Goff's trial, the trial court instructed the jury that "[b]efore you can find the Defendant Guilty of Specification No. 1 under Count 1, you must find that the State has proved beyond a reasonable doubt that . . . *the Defendant personally committed* each act which constituted the aggravated murder, including the act or acts that caused the death of Myrtle Rutledge." J.A. at 401 (Guilt Phase Hr'g Tr. at 2380) (emphasis added). This instruction correctly defined the term principal offender. *See Sneed*, 584 N.E.2d at 1168 (holding that a trial court's instruction defining principal offender as "one who personally performs every act constituting the offense, in this case aggravated murder" was sufficient to comply with OHIO REV. CODE § 2929.04(A)(7) (internal quotation marks omitted)). After receiving this correct instruction, the jury specifically found, via a verdict form, that Goff was the principal offender:

> We, the Jury, having found the Defendant, James R. Goff, Guilty of aggravated murder as he stands charged in Count 1 of the indictment now further find that the aggravated murder was committed while the said James R. Goff was committing or attempting to commit, or while fleeing immediately after committing or attempting to commit aggravated burglary and the offender *was the principal offender in the commission of the aggravated murder*.

J.A. at 420-21 (Guilt Phase Hr'g Tr. at 2416-17) (reading of verdict form) (emphasis added). There is simply no merit to Goff's assertions, and Goff's appellate counsel was not ineffective for failing to raise such a frivolous claim on direct appeal. Goff is not entitled to relief on this claim.

**4. Informant/Accomplice Instruction**

In Goff's ninth and sixteenth assignments of error, Goff argues that the trial court erred in failing to give a specific instruction to the jury regarding the credibility of testimony by accomplices and informants and that appellate counsel was ineffective for failing to raise this issue on direct appeal. Goff raised the underlying claim as part of his Ohio Rule of Appellate Procedure 26(B) motion, which the Ohio courts denied. The district court rejected this argument, and we conclude that Goff is not entitled to relief on this claim.

We have noted that "accomplice instructions as a general matter" are not required, and we have held that a trial court does not violate a defendant's constitutional rights by failing to give a specific accomplice instruction so long as the jury instructions "'adequately informed the jury regarding the credibility of witness testimony'" and "'alerted the jury to the various considerations that it should take into account in weighing testimony.'" *Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000) (quoting *United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993)). In the instant case, the trial court gave the following instruction:

> You are the sole judges of the facts and the credibility of the witnesses and the weight of the evidence. To weigh the evidence you must consider the credibility of the witnesses. You will apply the tests of truthfulness which you apply in your daily lives. These tests include the appearance of each witness upon the stand, their manner of testifying, the reasonableness of their testimony, the opportunity they had to see, hear, and know the things concerning which they testified about, their accuracy of memory, their frankness or lack of it, their intelligence, *their interest and bias, if any, together with all the facts and circumstances surrounding their testimony.* Applying these tests you will assign to the testimony of each witness such weight as you deem proper.
>
> *You are not required to believe the testimony of any witness* simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.

J.A. at 397-98 (Guilt Phase Hr'g Tr. at 2373-74) (emphases added). This instruction both informs the jury regarding credibility and alerts the jury to what is properly considered when determining credibility; thus it satisfies the criteria established in *Scott*. Therefore, the failure to give a specific accomplice instruction did not violate Goff's constitutional rights.[14]

Moreover, Goff's appellate counsel was not ineffective for failing to raise this issue on direct appeal. Goff correctly points out that, under Ohio law, "[i]f an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with . . . an offense," the trial court is required to "state substantially" a specific jury instruction regarding accomplice testimony:

> The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
>
> It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

OHIO REV. CODE ANN. § 2923.03(D).[15] However, at the time of Goff's trial and direct appeal, Ohio law held that this section applied only if a witness had been *indicted* as an accomplice. *See State v. Wickline*, 552 N.E.2d 913, 918 (Ohio 1990) (defining "accomplice" under a former version of § 2923.03(D) as a person who "at the very least

---

[14]*On Lee v. United States*, 343 U.S. 747 (1952), cited by Goff in his brief, does not change our analysis. In determining that certain testimony was not per se incompetent, the *On Lee* Court acknowledged:

> The trend of the law in recent years has been to turn away from rigid rules of incompetence, in favor of admitting testimony and allowing the trier of fact to judge the weight to be given it. . . .
> The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions.

*Id.* at 757. This passage is not a command that a specific jury instruction be given if an accomplice or informant testifies, but rather is an explanation of the Supreme Court's decision to categorize matters of credibility as questions of weight, not admissibility.

[15]OHIO REV. CODE § 2923.03 has been amended since Goff's sentencing; however, the pertinent language of subsection (D) has remained constant.

. . . [was] indicted for the crime of complicity"); *State v. Lordi*, 748 N.E.2d 566, 572 (Ohio Ct. App. 2000) (applying the *Wickline* accomplice definition to a later version of § 2923.03(D)); *State v. Royce*, Nos. CA92-09-023, CA92-09-024, CA92-09-025, CA92-09-026, 1993 WL 534691, at *4 (Ohio Ct. App. Dec. 27, 1993) (applying § 2923.03(D)—the version applicable during Goff's trial and appeal—and holding that a trial court did not err in refusing to give the accomplice instruction because the witness "was not charged with complicity as a result of his involvement with appellants' criminal activities"). None of the witnesses who testified against Goff were indicted as accomplices, and Goff points to no contrary Ohio authority to support an argument that § 2923.03(D) applies under such facts. Goff cannot demonstrate prejudice because he has not shown that there is any likelihood that his appeal would have had a different outcome had appellate counsel raised this issue. We conclude that this claim is meritless.

### 5. Right to Testify

In his ninth and seventeenth assignments of error, Goff asserts that he was denied his right to testify on his own behalf when trial counsel foreclosed his ability to testify by informing prospective jurors at voir dire that Goff would not testify at any point during the proceedings, and that appellate counsel was ineffective for failing to raise this issue on direct appeal. Goff raised the underlying claim for the first time as part of his failed Ohio Rule of Appellate Procedure 26(B) motion. The district court rejected this claim, noting that "the trial record is devoid of any evidence that petitioner's right to testify was usurped against his will or in violation of his fundamental rights." *Goff IV*, 2006 WL 3590369, at *27. We agree.

"The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant"; nevertheless, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the

right on the record." *United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000). Indeed, "when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed," and if a defendant disagrees with this decision, he "must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Id.* at 551 (internal quotation marks omitted). "When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *Id.*

As the district court correctly noted, there is no evidence that Goff ever alerted the trial court to his desire to testify at trial. Accordingly, we will presume that Goff waived this right, and, applying that presumption, we must conclude that Goff's constitutional rights were not violated by either trial counsel's statements at voir dire or appellate counsel's failure to raise this issue on direct appeal. We therefore conclude that Goff is not entitled to relief on this claim.

### 6. Conclusion on Claims of Ineffective Assistance of Appellate Counsel

In sum, although we reject most of Goff's arguments regarding ineffective assistance of appellate counsel, we conclude that Goff's appellate counsel was ineffective for failing to raise the issue of Goff's right to allocution and that the opposite conclusion reached by the Ohio Supreme Court constitutes an unreasonable application of federal law. We grant Goff relief on this basis, the scope of which is explained below.

### D.  Scope of Remedy

Having concluded that Goff is entitled to relief based on appellate counsel's failure to raise during Goff's direct appeal a claim based on Goff's right to allocution before sentencing, we now turn to the question of the proper scope of relief to accord Goff. *Mapes II* is instructive on this point. In *Mapes II*, we concluded that the petitioner received ineffective assistance of appellate counsel due to counsel's failure to raise an Eighth Amendment claim regarding the trial judge's instruction to the jury not to

consider some mitigating evidence. Mapes contended that, by granting the writ based on the Sixth Amendment violation, the court "also established that there was an Eighth Amendment violation at sentencing," and that this conclusion was now the law of the case. *Mapes v. Tate* (*Mapes II*), 388 F.3d 187, 193 (6th Cir. 2004) (emphasis removed). We rejected Mapes's argument, noting that we were

> present[ed with] a very narrow question: whether Mapes was deprived of effective assistance of appellate counsel in violation of the Sixth Amendment. Contrary to Mapes's contention, determination of this issue does not require us to *decide* the underlying issue whether Mapes's Eighth Amendment rights were violated *at sentencing*. As we stated repeatedly in *Mapes I*, Mapes's underlying claims were not raised on direct appeal and are thus barred by procedural default, an adequate and independent ground for affirming his sentence. *Mapes* [*v. Coyle* (*Mapes I*)], 171 F.3d [408,] 419, 424, 427 [(6th Cir. 1999)]. We further pointed out in *Mapes I* that these underlying claims are "relevant only insofar as [they] bear[ ] on the question whether appellate counsel was unconstitutionally ineffective in failing to raise [them]." *Id*. at 427.

*Id.* at 194 (fifth, sixth, and seventh alterations in original). We further noted that, although it was necessary to evaluate the underlying Eighth Amendment claim when determining if Mapes had received ineffective assistance of appellate counsel, such an evaluation "does *not* require a decision on or a determination of these issues[ the underlying claim]. All that is required is a determination that, based on the nature of the underlying claims, there is 'a reasonable probability that, but for his counsel's [failings] . . . , [the defendant] would have prevailed on his appeal.'" *Id*. (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)) (first alteration added). We granted the writ "conditioned upon Ohio courts granting a new, direct appeal," stressing that "[t]he [further] remedy Mapes requests goes far beyond 'neutraliz[ing]' the constitutional deprivation suffered by the defendant and would, therefore, contravene the rule announced in *Magana v. Hofbauer*, 263 F.3d 542, 553 (6th Cir. 2001)." *Id.* at 194-95 (third alteration in original); *see also Magana*, 263 F.3d at 553 ("[A] remedy for a Sixth Amendment violation should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." (internal quotation marks omitted)).

Applying the rationale of *Mapes II* to the instant case, we conclude that the only appropriate remedy that we can provide is to grant the writ of habeas corpus unless the Ohio courts reopen Goff's direct appeal. This narrow relief will allow us to neutralize the constitutional violation without overstepping the bounds of our power in this case. Therefore, we **GRANT** Goff's petition for a writ of habeas corpus unless the Ohio courts reopen Goff's direct appeal within 120 days to allow Goff to raise his allocution argument.

## E.  Remaining Claims

We now turn to Goff's remaining claims, none of which provide him any further relief.

### 1.  "Life Sentence is a Life Sentence" Jury Instruction

As his third assignment of error, Goff contends that the trial court should have submitted to the jury Goff's proposed jury instructions regarding parole eligibility because the prosecution alluded to Goff's future dangerousness during the prosecution's closing argument. Bagley counters that the trial court properly rejected Goff's proposed instructions because the jury could have recommended life with the possibility of parole.

Goff filed a motion to submit to the jury the following instruction:

> If sentenced to life imprisonment, under no circumstances could defendant be considered for parole for ___ years.  If I deem it appropriate, I may, upon your verdict of life, sentence defendant to ___ consecutive life sentences whereupon he could not be considered for parole for at least ___ years.
>
> There is no certainty that defendant would ever be released on parole.  After the minimum eligibility period I have already mentioned, the State Parole Board would be required by law to make a determination that there is a reasonable probability that, if defendant is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society.  The Board may not make this determination without consulting those concerned with the decision.  You, as jurors, retain a right under the law to express your views to the Board.  A prisoner released on parole

remains on parole for the balance of his life and if he violates the terms of the parole he may be returned to prison to serve the life sentence.

So that you will have no misunderstanding concerning the sentence of life imprisonment, I have instructed you concerning the law as it relates to parole. However, I further instruct you that the subject of possible parole must be excluded from your deliberations. So far as you are concerned, a life sentence is a life sentence. If upon and after consideration of all evidence you believe your verdict should be imprisonment for life, it would be a violation of your oaths as jurors to refuse to make that recommendation because of a baseless doubt that the State Parole Board will properly carry out its legal duties.

J.A. at 907-08 (Mem. in Supp. of Mot. to Instruct the Jury Regarding Parole at 1-2). The trial court denied the motion, instead instructing the jury as follows:

Members of the Jury, you have heard the evidence and the arguments of counsel and you will now decide whether you will recommend to the Court that the sentence of death shall be imposed upon the Defendant, and if not, whether the Defendant shall be sentenced to life imprisonment with parole eligibility after serving 20 full years of imprisonment or to life imprisonment with parole eligibility after serving 30 full years of imprisonment.

J.A. at 709 (Penalty Phase Hr'g Tr. at 2713).

Goff presented this claim on direct appeal, and the Ohio Supreme Court rejected it:

We have consistently held that consideration of parole and consecutive or concurrent sentences is not for the jury's consideration. See *State v. Mills* (1992), 62 Ohio St. 3d 357, 374, 582 N.E.2d 972, 987; *State v. Mitts* (1998), 81 Ohio St. 3d 223, 229-230, 690 N.E.2d 522, 528-529. The trial court did not abuse its discretion in declining to instruct the jury as appellant requested. Further, appellant's trial counsel made it clear in closing argument that the sentence imposed on the aggravated murder count would be in addition to the sentences he would receive on the other charges. Defense counsel also emphasized in voir dire and in closing argument that even if a life sentence was imposed, there was no guarantee that parole would be granted.

*Goff I*, 694 N.E.2d at 924. The district court also rejected Goff's claim on the merits, explaining that "a capital defendant is not entitled to an instruction about his parole

ineligibility if a life imprisonment without possibility of parole is *not* an option," and that, "[a]t the time that [Goff] was convicted and sentenced, there were only three sentencing options," none of which involved life without the possibility of parole. J.A. at 1283 (8/19/03 Op. and Order at 34). We agree with the district court.

The Supreme Court has held that, "if the State rests its case for imposing the death penalty at least in part on the premise that the defendant will be dangerous in the future," and life without the possibility of parole is the only alternative to a death sentence, "due process plainly requires that [the defendant] be allowed to bring it [the fact that the defendant is ineligible for parole] to the jury's attention by way of argument by defense counsel or an instruction from the court." *Simmons v. South Carolina*, 512 U.S. 154, 168-69 (1994); *Shafer v. South Carolina*, 532 U.S. 36, 39 (2001) (reiterating that if "a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 165 (2000)) (alteration in original)). In the instant case, at the time of Goff's sentencing, Ohio law provided for three alternative sentences in capital cases: "death, life imprisonment with parole eligibility after serving twenty years, and life imprisonment with parole eligibility after serving thirty years." J.A. at 1283 (8/19/03 Op. and Order at 34). None of these alternatives involve life without the possibility of parole. Therefore, *Simmons* and its prodigy are not applicable to Goff's case. Thus, Goff cannot demonstrate that the Ohio Supreme Court's decision regarding this jury instruction was contrary to, or an unreasonable application of, Supreme Court precedent.

**2. Disclosure of Plea Agreement**

In his fourth assignment of error, Goff contends that the prosecution committed a *Brady v. Maryland*, 373 U.S. 83 (1963), violation by failing to disclose a plea agreement between a key witness, Keith Lamar Jones, and federal prosecutors. Goff raised this claim on state postconviction review. When evaluating and ultimately rejecting Goff's claim, the Ohio Court of Appeals made the following findings of fact:

Unbeknownst to either the state or appellant, on June 15, 1995, Jones had signed a written plea agreement with the United States attorney which included the following paragraph:

Finally, the United States Attorney for the Southern District of Ohio agrees that if [Jones] provides substantial assistance in the investigation or prosecution of others who have committed criminal offenses, the United States Attorney may move the Court . . . for an appropriate departure from the otherwise applicable guideline range for [Jones'] sentence and will in connection therewith make known to the Court the nature and extent of [Jones'] assistance.  [Jones] understands that whether such motion should be made lies within the discretion of the United States Attorney and that whether and to what extent such motion should be granted are solely matters for determination by the Court.

On July 10, 1995, Jones entered a guilty plea to one count of false use of a social security number in violation of Section 408(a)(7)(B), Title 42, U.S. Code.

On cross-examination during his testimony at appellant's trial, when asked whether he was under indictment or investigation in federal court, Jones replied that he was for misuse of a social security number. Appellant's trial counsel further delved into the pending federal charge. Appellant's trial counsel elicited not only that Jones had been indicted under the federal charge, but that he had also pled guilty to the federal charge.  Jones admitted that in addition to the time he had already served, he was "looking at more time[.]"  Appellant was subsequently convicted in July and sentenced in August 1995.

On September 7, 1995, the United States attorney filed a motion for substantial assistance asking the federal court to consider Jones' "substantial assistance . . . in a case prosecuted by local authorities" in determining an appropriate departure from the applicable sentencing guidelines.  On September 15, 1995, the state received a letter from Jones' attorney seeking a letter on behalf of Jones regarding his assistance in appellant's trial.  On September 20, 1995, the state addressed a letter to the federal court which stated that Jones' "testimony was critical in the successful prosecution of [appellant.] . . . Mr. Jones voluntarily contacted our office and provided us with information and testimony that was extremely beneficial in the preparation of our case."

During Jones' October 31, 1995 sentencing hearing, the United States attorney stated that Jones was the state's key witness in appellant's trial and that his testimony was critical.  Jones' attorney, in turn, stated

that Jones had been very cooperative not only in appellant's trial, but also with "agents of the United States government from divisions of the IRS, Health and Human Services and others[.]"  That same day, Jones was sentenced to a twenty-four month term of imprisonment, instead of a possible maximum sixty-month term.

*Goff II*, 2001 WL 208845, at *4-5 (alterations and omissions in original).  The Ohio Court of Appeals then concluded that "there is no evidence of any consideration to be given Mr. Jones in exchange for his testimony.  The affidavits and exhibits reflect that the state did not receive any requests until some 51 days after Jones testified.  There is no evidence of any prior promises or agreements."  *Id*. at *5 (internal quotation marks omitted).  Additionally, the Court of Appeals noted that "[w]hile the record indicates when the state became aware of Jones' then-pending federal charge, it is not clear when, if ever before Jones' testimony, the state learned about Jones' plea agreement and/or guilty plea."  *Id*.  The Court of Appeals also concluded that, "even assuming that the state failed to disclose Jones' plea agreement to appellant, we find, based upon the totality of the circumstances, that there is no 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Id*. at *6 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

The district court also denied relief on this claim, noting that "[t]here is no evidence that the state prosecutors ever promised Jones any consideration in exchange for his testimony . . . . [or] that they were aware that [Jones] had entered into a plea agreement."  *Goff IV*, 2006 WL 3590369, at *16.  The district court explained that "a prosecutor has no obligation under *Brady* to learn of information possessed by other government agencies having no involvement in the investigation or prosecution at issue," and rejected Goff's contention "that the knowledge of the federal prosecutors should be imputed to the [state] prosecutors."  *Id*. (citing *United States v. Morris*, 80 F.3d 1151, 1169-70 (7th Cir. 1996)).  We agree.

It is true that, "[p]ursuant to *Brady*, 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the

prosecution,'" *United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007) (quoting *Brady*, 373 U.S. at 87); however, "'*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess,'" *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975)), *cert. denied*, 128 S. Ct. 1703, 128 S. Ct. 1704 (2008).  Goff has failed to demonstrate that the Ohio Court of Appeals's factual finding—that the state prosecutor had no knowledge of Jones's plea agreement before Jones testified—is clearly erroneous, and thus we take that fact as true. *See Bailey*, 271 F.3d at 656.  Furthermore, Goff has pointed to no federal authority requiring a state prosecutor to inquire into the federal prosecution of a witness that is unrelated to the state case and that does not involve any persons acting on behalf of the state prosecutor. Indeed, there is federal law supporting the opposite proposition—that *Brady* and its prodigy do not "impos[e] a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *Morris*, 80 F.3d at 1169; *Moon v. Head*, 285 F.3d 1301, 1310 (11th Cir. 2002) (refusing to impute to a Georgia prosecutor information that Tennessee authorities possessed regarding a defendant, where there was no evidence that (1) the Georgia and Tennessee agencies shared any resources or labor, (2) the two agencies worked together during the investigation of the defendant, or (3) the Tennessee authorities were under the direction or supervision of the Georgia prosecutor).  Under these circumstances, we cannot say that the Ohio Supreme Court's conclusion on this issue was contrary to, or an unreasonable application of, Supreme Court precedent.  Goff is not entitled to relief on this claim.

### 3.  Jury Instruction Regarding Specific Mitigating Factors

In his fifth assignment of error, Goff contends that the trial court's refusal to submit to the jury Goff's proposed jury instruction regarding specific mitigating factors that the jury could consider resulted in an unfair trial.  Such factors included:

(1)     Mr. Goff's personality disorder;
(2)     any residual doubt about the defendant's guilt of the offense charged, or an aggravated circumstance;

     (3)     Mr. Goff's potential for rehabilitation;

     (4)     Mr. Goff's ability to make a well-behaved and peaceful adjustment to life in prison;

     (5)     Mr. Goff's ability to lead a useful life behind bars if sentenced to life imprisonment;

     (6)     Mr. Goff's devotion to and care of his family members;

     (7)     Mr. Goff's deprivation of parental nurturing, and the fact his conduct disorder was caused by family environment; and

     (8)     The youth of the offender.

Goff Br. at 57. Additionally, Goff asserts in assignment of error eight that it was error for the trial court not to instruct the jury regarding Goff's drug use as a mitigating factor. Rather than submit Goff's proposed instructions, the trial court instructed the jury as follows:

> In making your decision you will consider all the evidence, the arguments of counsel, and all other information and all other reports which are relevant to the nature and circumstances of the aggravating circumstances or *to any mitigating factors* including, but not limited to, the nature and circumstances of the offense, and 1) the history and character and background of the Defendant, 2) the youth of the Defendant, and 3) any other factors that are relevant to the issue of whether the Defendant should be sentenced to death.

> You are to weigh the aggravating circumstances which you have already found against *any mitigating factors* which you find to exist.

J.A. at 710 (Penalty Phase Hr'g Tr. at 2714) (emphases added).

Goff raised this issue on direct appeal, and, citing *Eddings v. Oklahoma*, 455 U.S. 104 (1982), the Ohio Supreme Court rejected Goff's claim. *Goff I*, 694 N.E.2d at 922-23. The district court also rejected the claim, noting that the jury instruction given did not violate state law and that "petitioner was not denied due process . . . . [because t]he court's instructions permitted the jury to consider all the evidence presented by petitioner in mitigation." *Goff IV*, 2006 WL 3590369, at *19, *23. We, too, reject Goff's claim.

As stated above, "[t]he Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner." *Boyde*, 494 U.S. at 377-78. An instruction is constitutional so long as the jury is

permitted to consider all of the relevant mitigation evidence. *Buell*, 274 F.3d at 353. "Where the trial court instructs the jury in accordance with state law and sufficiently addresses the matters of law at issue, no error results and the petitioner is not entitled to habeas relief." *White*, 431 F.3d at 534.

Here, the trial court's instruction allowed the jury to consider all of Goff's mitigation evidence, and thus adhered to Supreme Court doctrine. *Cf. Buell*, 274 F.3d at 353 (denying habeas relief where the trial court gave a jury instruction very similar to the one at issue in the instant case). Moreover, Goff has not argued that the trial court's instruction violated Ohio law. Because the instruction did not violate state law, and did not limit the jury's consideration of mitigating factors, we conclude that the Ohio Supreme Court's resolution of this claim was not contrary to, or an unreasonable application of, federal law.

### 4.    Refusal to Instruct the Jury Not to Consider the Nature and Circumstances of the Offense

In his sixth assignment of error, Goff asserts that the trial court should have instructed the jury not to consider the nature and circumstances of the crime when weighing the mitigating and aggravating factors. Instead, the trial court specifically instructed the jury to consider "all the evidence, . . . including . . . the nature and circumstances of the offense." J.A. at 710 (Penalty Phase Hr'g Tr. at 2714). The Ohio Supreme Court denied this claim on direct appeal. *Goff I*, 694 N.E.2d at 922-23. The district court also rejected this claim, finding that "[t]he Ohio Supreme Court has held that under § 2929.04(B), it is proper, and indeed required, that the court instruct the jury to consider the nature and circumstances of the offense as a mitigating factor," and that "[a] state statute which requires the jury to consider the circumstances of the crime for which the defendant was convicted is not unconstitutional." *Goff IV*, 2006 WL 3590369, at *20. We agree.

We have noted that Ohio law requires the jury to "'consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense.'" *Slagle v. Bagley*, 457 F.3d 501, 520 (6th Cir. 2006)

(quoting OHIO REV. CODE § 2929.04), *cert. denied*, 551 U.S. 1134 (2007). Such a requirement is not unconstitutional. *See Tuilaepa v. California*, 512 U.S. 967, 976 (1994) ("[O]ur capital jurisprudence has established that the sentencer should consider the circumstances of the crime in deciding whether to impose the death penalty."); *Slagle*, 457 F.3d at 521. Therefore, we cannot conclude that the Ohio Supreme Court's rejection of this claim was contrary to, or an unreasonable application of, federal law.

### 5.    Refusal to Instruct the Jury Not to Consider the Aggravated Murder Itself

In his seventh assignment of error, which is very similar to his sixth assignment of error, Goff argues that the trial court should have instructed the jury not to consider the aggravated murder itself when weighing the mitigating and aggravating factors. The Ohio Supreme Court rejected this claim on direct appeal, noting that "the [trial] court correctly identified the aggravating circumstances, and the process of weighing the aggravating circumstances against the mitigating factors." *Goff I*, 694 N.E.2d at 922. The district court agreed, concluding that the instruction was correct under state law and that it did not violate the Constitution. *Goff IV*, 2006 WL 3590369, at *22. As we explained above, the trial court's jury instruction regarding the nature and circumstances of the crime comports with both state law and the Constitution. Moreover, Goff has pointed to no authority requiring that a jury be specifically instructed that it cannot consider the aggravated murder itself. Therefore, the Ohio Supreme Court's decision on this matter was not contrary to, or an unreasonable application of, federal law.

### 6. Trial Court's Refusal to Consider Drug Abuse as a Mitigating Factor

In assignment of error ten, Goff asserts that the trial court refused to consider Goff's drug abuse at the time of the commission of the crime as a mitigating factor, rendering Goff's death sentence unfair. The trial court made the following observations in its sentencing opinion:

> b) The Defendant has argued that he suffered from alcohol and/or drug impairment at the time of the offense.

Although there was evidence that the Defendant had used crack cocaine earlier in the day, there was no evidence that at the time of the offense he had used alcohol or was under the influence of either alcohol or crack cocaine at the time of this offense.  Furthermore, the use of alcohol or drugs is not an excuse for committing a crime.

The Court assigns no weight to this as a mitigating factor.

J.A. at 935-36 (8/18/95 Decision at 9-10).  The Ohio Supreme Court rejected this claim on the merits during Goff's direct appeal:

The trial court's statement that it "assigns no weight to this as a mitigating factor" indicates clearly that the trial court did not "refuse to consider" alcohol and drug abuse as a mitigating factor.  At the same time, we also agree that some of the trial court's earlier chosen language may be inartful, to the extent that the trial court's sentencing opinion may be susceptible of a reading that indicates no need to consider the factor simply because appellant was not under the influence of drugs or alcohol *at the time of the offense*.  The court's statement in that regard would be an incorrect definition of mitigation, one that relates directly to culpability, as opposed to those factors that are relevant to whether the offender should be sentenced to death. . . .

However, when this portion of the sentencing opinion is considered in its entirety, there is no error.  Moreover, *if there was error, our independent review would cure it.*

*Goff I*, 694 N.E.2d at 925 (internal citation omitted) (second emphasis added).  The district court also rejected this claim, noting that any error the trial court committed was corrected when the Ohio Supreme Court independently reweighed the aggravating and mitigating factors.  *Goff IV*, 2006 WL 3590369, at *38-39.  We agree.

We have "held that reweighing by the Ohio Supreme Court under Ohio Rev. Code § 2929.05(A) satisfies the requirements of *Clemons* [*v.Mississippi*, 494 U.S. 738 (1990), which allows an appellate court to cure errors by the trial court in weighing mitigating and aggravating factors,] when the court either eliminates impermissible aggravating factors or adds overlooked mitigating factors."  *Lundgren v. Mitchell*, 440 F.3d 754, 783 (6th Cir. 2006) (citing *Baston v. Bagley*, 420 F.3d 632, 638 (6th Cir. 2005)).  In the instant case, the Ohio Supreme Court independently reweighed the mitigating and aggravating factors, concluding that Goff "used marijuana, 'speed,' and

inhalants. His crack cocaine dependency occurred during a period of several months in 1994, leading to this crime. However, we give little weight to appellant's voluntary substance abuse." *Goff I*, 694 N.E.2d at 931. This reweighing, which considered Goff's substance-abuse argument, cured any failure on the part of the trial court in regard to weighing Goff's substance abuse. Goff is not entitled to relief on this ground.

### 7. Prosecutorial Misconduct

In his thirteenth assignment of error, Goff contends that he was denied a fair trial due to prosecutorial misconduct, which occurred when the prosecutor made the following statement in his closing argument:

> I heard this on the radio and it really, really strikes home. I heard an individual on the radio say that the juries of today, of which you are one, when they reach their verdicts, when they reach their recommendation of sentencing, as in this case, are setting the standards of behavior acceptable to society, and Ladies and Gentlemen of the Jury, that is true. And the question is, what standard of behavior are you going to set for society as you go back in that Jury Room and deliberate? What is your standard? Is the standard going to be you can kill somebody with no remorse because you want money to go buy crack? Or is the standard going to be, we will not accept that?

J.A. at 683 (Penalty Phase Hr'g Tr. at 2687). After this statement was made, Goff's attorney asked for a sidebar conference, at the conclusion of which the trial court instructed the jury as follows:

> The Court is going to give you an instruction at this time that you are to ignore and disregard any comments that were just made by the State concerning enforcing the standards of behavior acceptable to society. Your job here today is to follow the instruction of the Court and make your decision accordingly.

J.A. at 683-84 (Penalty Phase Hr'g Tr. at 2687-88). On direct appeal, the Ohio Supreme Court concluded that the prosecutor's comments were improper, but ultimately rejected Goff's claim on the ground that there was no showing of prejudice:

> The prosecutor, however, did overstep the bounds of proper argument on one occasion, arguing that the jury must set the standards of behavior

> acceptable to society, and appealing to public sentiment. However, defense counsel immediately objected, and the jury was instructed to disregard the prosecutor's inappropriate comments. The jury is presumed to follow the court's instruction.

*Goff I*, 694 N.E.2d at 926. The district court likewise rejected Goff's claim, *Goff IV*, 2006 WL 3590369, at \*55-58, as do we.

"In the evaluation of a claim for prosecutorial misconduct, it is not enough that the prosecutor's comments were improper, but '[t]he relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."'" *Smith*, 567 F.3d at 255 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974))). In other words, "[i]n order to satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007). To determine whether improper conduct is flagrant, we consider four factors:

> (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant.

*Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.), *cert. denied*, 546 U.S. 865 (2005).

In the instant case, it is clear that the remarks made by the prosecution were improper, but we do not believe that they were flagrant. Although the remarks were deliberately made and might have misled the jury absent a curative instruction, the trial court immediately gave a curative instruction, which we must presume the jury followed. *Scott*, 209 F.3d at 879 (holding that curative instructions are "presume[d] to have been effective unless there is an 'overwhelming probability' that they were ignored" (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987))). Further, the remarks were isolated, and there was substantial evidence before the jury favoring a death sentence. Therefore, we conclude that the Ohio Supreme Court's decision on this issue is not contrary to, or an unreasonable application of, federal law.

### 8. Ineffective Assistance of Trial Counsel

As noted above, to demonstrate ineffective assistance of counsel, Goff must establish that his trial counsel was deficient and that this deficiency prejudiced Goff. *Strickland*, 466 U.S. at 687. Prejudice is shown if Goff establishes "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In his eleventh assignment of error, Goff asserts that his trial counsel was ineffective because: (1) counsel failed to object at voir dire when the trial court asked each juror whether he or she could vote for the death penalty; (2) counsel did not make a proper inquiry into certain mitigating factors, specifically the degree of Goff's involvement in the crime (i.e., whether Goff was the principal offender); (3) counsel did not object to improper prosecution arguments, specifically the prosecutor's reference to the jury setting a moral standard with its verdict; and (4) counsel did not properly attempt to convince Goff to accept a plea agreement. We have already addressed and rejected the underlying claims presented by arguments two and three. Given this rejection, Goff cannot show prejudice and his claim of ineffective assistance of trial counsel based on those arguments must fail. As for arguments one and four, nowhere in Goff's briefs does Goff actually argue or explain these two claims; thus, these arguments are deemed waived. *Hall*, 549 F.3d at 1042.[16]

---

[16]Even if these two arguments were not waived, Goff would not be entitled to relief. The trial court was well within its discretion in asking prospective jurors if, under appropriate circumstances, they could return a death sentence. *See Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991) (noting, in the context of questions regarding racial bias, that "the trial court retains great latitude in deciding what questions should be asked on *voir dire*"). Moreover, it appears that such a question does not violate Ohio law. *See, e.g.*, *State v. Evans*, 586 N.E.2d 1042, 1057-58 (Ohio 1992) (holding that the trial court's inquiry of each juror "whether they could impose the death penalty upon the defendant" was not improper (internal quotation marks omitted)). Given the precedent available, it is unlikely, even if trial counsel had objected to the question, that the objection would have, or should have, been sustained, and, thus, Goff cannot demonstrate prejudice on this claim.

As to Goff's fourth claim under this heading, Goff does not point to any specific way in which his trial counsel was ineffective in regard to the plea offer. Although Goff does have an affidavit from an experienced capital defense attorney outlining a view on effective assistance in this arena, that affidavit does not specifically address Goff's representation. J.A. at 1175-83 (Vickers's Aff.). The affidavit does not state whether Goff received effective assistance during his plea bargaining experience, but merely makes a blanket statement that "the vast majority of capital defendants will be misrepresented—and their constitutional right to the effective assistance of counsel denied—if their counsel does not do everything within his ability to resolve the case in a plea less than death." J.A. at 1183 (Vickers's Aff. ¶ 28).

Goff admits that his counsel advised him to take the plea deal and that he rejected the deal against counsel's advice. *Goff IV*, 2006 WL 3590369, at *44. However, Goff does not present any evidence regarding what effort counsel did or did not make in trying to convince Goff to accept the plea bargain. The district court noted that Goff's "sole allegation is that his trial attorneys failed to obtain assistance from more experienced attorneys to persuade [Goff] to accept the prosecution's plea offer." *Id.* at *45.

## III. CONCLUSION

Because we conclude that Goff received ineffective assistance of appellate counsel in regard to his right to allocution under Ohio law, we **REVERSE** the decision of the district court and **GRANT** Goff's petition for a writ of habeas corpus unless the Ohio courts reopen Goff's direct appeal within 120 days to permit his counsel to raise this issue on direct appeal. We **AFFIRM** the denial of a writ of habeas corpus on all other issues raised in this appeal.

---

We have found no binding authority that requires capital counsel to seek out such advice, nor does Goff point to any. Furthermore, the affidavit Goff provides does not state that Goff's counsel was ineffective. Thus, there is no evidence that Goff's trial counsel was ineffective in this regard.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

MERRITT, Circuit Judge, concurring in part and dissenting in part. Nothing in the instructions in this case puts the jury on notice concerning rules as simple as (1) which party has the burden of proof in establishing the existence of any single mitigating factor or whether collectively the mitigators outweigh the aggravators, or (2) whether unanimity is required as to the existence of one or all of the "collective mitigators," or, finally, (3) what effect it would have on the verdict if a single juror believes without agreement from other jurors that a particular mitigator should reduce the penalty to life imprisonment without parole. In this totally confused state of affairs, a juror could think that the defendant must prove mitigators by the same standard as the prosecution must prove aggravators and that jury unanimity is required as to mitigators just as to aggravators or that a new trial is required in the absence of jury unanimity.

Although the Supreme Court has now established that the *Mills* doctrine does not prohibit this potential for massive confusion in the jury room as they deliberate on the need to impose the death penalty, Justice Stevens, in his concurring opinion in *Smith v. Spisak,* 558 U.S. —, 130 S. Ct. 676 (Jan. 12, 2010), after agreeing with the majority in *Spisak* that "*Mills* does not clearly establish [under AEDPA] that the instructions at issue were unconstitutional," states: "But, in my view, our decision in *Beck v. Alabama*, 447 U.S. 625 (1980), does." *Spisak*, 130 S. Ct. at 689. Justice Stevens describes the potential confusion in Ohio's mitigation and acquittal-first instructions as follows:

> The acquittal-first jury instructions used during Spisak's penalty phase interposed before the jury the same false choice that our holding in *Beck* prohibits. By requiring Spisak's jury to decide first whether the state had met its burden with respect to the death sentence, and to reach that decision unanimously, the instructions deprived the jury of a meaningful opportunity to consider the third option that was before it, namely, a life sentence. Indeed, these instructions are every bit as pernicious as those at issue in *Beck* because they would have led individual jurors (falsely) to believe that their failure to agree might have resulted in a new trial and that, in any event, they could not give effect to their determination that

a life sentence was appropriate unless and until they had first convinced each of their peers on the jury to reject the death sentence.

*Id.* at 690-91.  Having explained, in part, this problem of confusion in the jury room, Justice Stevens concludes as follows:

Spisak and the Court of Appeals both correctly assailed the jury instructions at issue in this case, but in my view *Beck* provides the proper basis in clearly established federal law to conclude the instructions were unconstitutional.

*Id.* at 691.

It is unclear from the paragraph in the majority opinion in *Spisak* that mentions Justice Stevens' concurring opinion what position the majority takes with respect to Justice Stevens' argument that the *Beck v. Alabama* due process case should be used as the source for the holding that the confusing Ohio mitigation and acquittal-first instructions are unconstitutional.  The majority neither explicitly accepts nor rejects his argument.  *Spisak*, 130 S. Ct. at 684.

Justice Stevens was under the impression that the Ohio Supreme Court had changed its instructions in 1996 in *State v. Brooks*, 75 Ohio St. 3d 148 (1996):

Ohio no longer uses the type of jury instructions at issue in this case.  In 1996, the Ohio Supreme Court instructed that "[i]n Ohio, a solitary juror may prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors.  Jurors from this point forward should be so instructed."  *State v. Brooks*, 75 Ohio St. 3d 148, 162, 661 N.E.2d 1030, 1042. . . . [T]he Ohio high court laudably improved upon the accuracy of Ohio capital jury instructions in *Brooks*.

*Spisak*, 558 U.S. at ____, 130 S. Ct. at 689 n.1.  But in fact there has been no significant change in Ohio law on this subject and instructions continue to leave the burden of proof on mitigators in a state of confusion as well as the question of unanimity on mitigators and the consequences for the death penalty of juror disagreement about mitigators.  The courts in Ohio are still not required to tell the jury explicitly that "in Ohio a solitary juror may prevent [the] death penalty . . . . Jurors from this point forward should be so

instructed." *Brooks*, 75 Ohio St. 3d at 159-60. Neither are the Ohio courts required to advise the jury what happens when the jurors disagree on the weight to be given to a mitigating factor. Ohio courts are still upholding death verdicts that do not clarify the "acquittal-first," mitigation confusion. See, *e.g.*, *State v. Gray*, No. 92303, 2010 WL 320481, at \*3 - \*4 (Ohio Ct. App. Jan. 28, 2010) (refusing to find plain error when judge only instructed jury that they must find death penalty unanimously); *State v. Smith*, 97 Ohio St. 3d 367, 372, 780 N.E.2d 221, 229 (2002) ("Although it is *advisable* for courts to explicitly instruct the jury that a single juror 'may prevent a death penalty recommendation by finding that the aggravating circumstances . . . do not outweigh the mitigating factors,' the charge as given did not create prejudicial error." (citation omitted) (emphasis added)). It would appear that almost all of the large number of condemned prisoners on death row in Ohio are there as a result of the same basic set of instructions that Justice Stevens' opinion labels as unconstitutional under clearly established federal law.

In light of the fact that it still remains undecided whether the petitioner Goff in this case is being condemned to death on the basis of unconstitutional jury instructions, I would first ask the parties to brief the question raised by Justice Stevens in his concurring opinion. In the absence of such briefing and consideration, I am inclined to follow Justice Stevens' argument, which would require the issuance of the writ of habeas corpus on due process grounds using *Beck* as the source of the constitutional law that invalidates these highly confusing Ohio jury instructions. Goff has made the argument that the Ohio instructions are completely confusing for the same reasons, and I agree with him that no one should be executed as a result of such instructions. The only question is: Can he shift his argument as a matter of form, not substance, to rely on due process under the *Beck* case as explained by Justice Stevens? I think we should allow Goff to unlink his argument from *Mills* and *Spisak* and state his question more broadly to include the issue as outlined by Justice Stevens, as explained above.

Except for our court's disposition of the issue of the constitutionality of the jury instructions described above, I would concur in the other parts of the court's opinion.